IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

LEO L. RATHKE, JR.,

        Plaintiff,
vs.                                   **Case No. 09-4045-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

**MEMORANDUM AND ORDER**

    On July 21, 2006, plaintiff filed an application for social security disability insurance benefits. This application alleged a disability onset date of June 1, 2004. On February 5, 2008, a hearing was conducted upon plaintiff's application. The administrative law judge (ALJ) considered the evidence and decided on December 24, 2008 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

    To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of

not less than 12 months." § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. THE ALJ'S DECISION (Tr. 9-17).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 10-11). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity,

age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth step of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2009. Second, plaintiff has not engaged in substantial gainful activity since June 1, 2004, the alleged onset date of disability. Third, plaintiff has the following severe impairments: left carpal tunnel syndrome residual, cognitive disorder and bipolar disorder. Fourth, plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations:

> The claimant is limited to occasional use of his left hand for fingering and feeling. The claimant cannot perform work that involves climbing ladders, ropes or scaffolds or working at unprotected heights. The claimant is limited to work involving understanding, remembering, and carrying out simple instructions, and which involves no more than occasional interaction with the general public.

(Tr. 13). Sixth, plaintiff is unable to perform any past relevant work as a "laborer, stores; armored car guard; animal control

officer and hand packager." (Tr. 16). But, plaintiff is capable of performing jobs that exist in significant numbers in the national economy, such as: cafeteria attendant; housekeeping cleaner; hand mounter; and coater, brake linings. (Tr. 16-17).

III. PLAINTIFF'S ARGUMENTS

Plaintiff's arguments concern the ALJ's evaluation of medical reports from three doctors and a nurse. Plaintiff contends that the ALJ did not follow the correct legal standards in evaluating these reports and that substantial evidence does not support the ALJ's RFC finding.

    A.   <u>The reports of Eyman, Mintz, Milius and Kretsinger</u>

As background to the discussion of these reports, the court would note that plaintiff worked in a beef packing plant for many years and then suffered two injuries while working there in 1999. The second injury involved a blow to plaintiff's head. Plaintiff made a worker's compensation claim. In connection with that claim, he was examined by Dr. James Eyman, a psychologist, in 2004.

    1.   <u>Dr. Eyman's report</u> (Tr. 671-74).

Dr. Eyman reviewed plaintiff's work history, noting that plaintiff stopped working at the beef packing plant in 2001. After that, plaintiff failed to hold jobs as an animal control officer, a security officer, and a night stockman in a grocery store. Plaintiff lost the security officer position because his employer went out of business. Plaintiff felt that he hadn't done well at

4

keeping a job since his accident at the beef packing plant, so he was staying at home taking care of his children while his wife worked. Plaintiff told Dr. Eyman that since his head injury, he felt more confused, had trouble grasping things and suffered memory problems. He felt useless and depressed, more easily stressed and frequently irritable.

After administering the Minnesota Multiphasic Personality Inventory-2, Dr. Eyman concluded that plaintiff was depressed, sad, despondent, indecisive, oversensitive and easily hurt. Plaintiff had problems expressing anger appropriately. Intelligence tests demonstrated that plaintiff had average intellectual ability, but suffered from a mathematics disorder.

Dr. Eyman diagnosed plaintiff as having major depression, single episode, in partial remission. (Tr. 673). His symptoms included: depressed mood most of the day, nearly every day; diminished pleasure from activities; insomnia; loss of energy; feelings of worthlessness; weight gain; diminished ability to think and to concentrate; and thoughts about committing suicide. As mentioned, Dr. Eyman indicated that plaintiff's depression was in partial remission. Dr. Eyman thought that plaintiff's ability to think and concentrate was adequate, that plaintiff was not experiencing cognitive difficulties, and that he was not suicidal. Dr. Eyman remarked that plaintiff was still suffering from depression, but thought that with medication and psychotherapy his

5

prognosis was good.

        2.   <u>Dr. Mintz</u> (Tr. 334-37).

Dr. Mintz, a psychologist, examined plaintiff on October 26, 2006. He noted that plaintiff had some depression and had been hospitalized with more severe mental illness problems a few months earlier. He said that "these problems seem to be getting resolved." (Tr. 334). Plaintiff told Dr. Mintz that his wife and mother-in-law do not feel comfortable with him watching his children, so his mother-in-law comes over. Plaintiff reported that he does some shopping, some cooking and some housework. Dr. Mintz recorded that plaintiff was alert and oriented as to time and place:

> [Plaintiff] is pleasant and cooperative, he completes the examination in a satisfactory manner. He does not appear psychotic and there are no reports of hallucinations or delusions. He states he is somewhat but not significantly depressed, he states he did experience mood swings, mania, but that he is not experiencing Bipolar or mood disorder type symptoms at this time. He denies paranoia at this time. He does not appear phobic or obsessive/compulsive. . . .
> He exhibits some deficiencies in terms of visual delayed memory and general memory with average visual memory ability and auditory recognition memory ability. He has significant variability in specific scores most likely this appears to point to some symptoms of a cognitive disorder, consistent with a head injury.

(Tr. 335-36).

Dr. Mintz summarized:

> [Plaintiff] apparently exhibited acute decompensation earlier this summer requiring hospitalization and mental health treatment. He states his symptoms have essentially resolved. There is some inconsistency noted

> in terms of the medical and psychological reports which
> I reviewed and [plaintiff's] own self report and perhaps
> he may be in some denial in terms of symptoms
> presentation I'm simply not sure. He may experience some
> memory loss and some confusion still at this time and
> therefore I would think he would have some difficulty
> relating consistently well to potential co-workers and
> supervisors at this time. He appears able to understand
> simple and intermediate instructions. His concentration
> capacity may be variable. He may not be fully capable of
> handling his own funds at this time due to cognitive
> disorder symptoms.

(Tr. 336).

Dr. Mintz diagnosed plaintiff with cognitive disorder, not otherwise stated, and adjustment disorder with depressed mood. He listed plaintiff's GAF as 60 and highest GAF for the past year as 60. (Tr. 337).

      3. <u>Nurse Milius' medical source statement</u> (Tr. 382-83).

In December 2006, Annette Milius, a nurse-practitioner, completed a medical source statement regarding plaintiff. This statement lists twenty categories of mental functioning which are rated from "not significantly limited" to "moderately limited" to "markedly limited" to "extremely limited." Milius listed plaintiff as "extremely limited" in the following categories: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the

7

ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others.

She listed plaintiff as "markedly limited" in the following categories: the ability to understand and remember very short and simple instructions; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting.

She listed plaintiff as "moderately limited" in the other categories on the form: the ability to remember locations and work-like procedures; the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain attendance and be punctual within customary tolerances; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to maintain socially appropriate behavior; and the ability to be aware of normal hazards and take appropriate precautions.

  4. <u>Dr. Kretsinger's medical source statement</u> (Tr. 393-96)

Dr. Kretsinger completed a medical source statement in January 2008, using basically the same form as Nurse Milius. He listed no extreme limitations in plaintiff's mental capacity and only two marked limitations: the ability to understand and remember very short and simple instructions; and the ability to understand and remember detailed instructions. He found that plaintiff was not significantly limited in the ability to ask simple questions or request assistance and the ability to be aware of normal hazards and take appropriate precautions. Dr. Kretsinger said that plaintiff was "moderately limited" in all of the other categories mentioned above in the summary of Nurse Milius' medical source statement.

B. The ALJ's evaluation of the reports

The ALJ made no comments regarding how he evaluated the above-summarized reports other than to say that he gave "little weight" to the opinions of Dr. Kretsinger and Nurse Milius "as they are not well-supported or consistent with the evidence[,] particularly the reports [of Dr. Eyman and Dr. Mintz]." (Tr. 15). The court agrees with plaintiff's argument that the ALJ failed to explain his analysis of these reports so as to demonstrate that he followed the controlling standards and as to permit the court to properly review his decision.

Medical opinions in these cases must be evaluated under the provisions of 20 C.F.R. § 404.1527. The ALJ must decide whether to

9

give the opinion of a treating physician controlling weight. § 404.1527(d). If a treating source is not given controlling weight, then the ALJ must consider how much deference and weight to accord the opinion on the basis of the following factors: 1) the length of treatment relationship and frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) the consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(1-6); Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2007); Mosher v. Astrue, 479 F.Supp.2d 1196, 1204 (D.Kan. 2007). These factors also must be considered in deciding the weight to give any medical opinion, regardless of whether it derives from a treating source. § 404.1527(d).

The ALJ does not discuss many of these factors in relation to the reports of Eyman, Mintz, Milius and Kretsinger. He does not mention whether he considers Kretsinger and Milius to be treating sources, or describe their treating and examining relationship with plaintiff. Although the ALJ indicates that he gives the opinions of Eyman and Mintz more weight than the reports of Kretsinger and

10

Milius, he does not state how much weight he gives to the opinions of Eyman and Mintz. The ALJ suggests that the reports of Kretsinger and Milius are not well-supported or consistent with the evidence, but he does not describe the alleged inconsistent evidence except by broad reference to the exhibits containing the reports of Eyman and Mintz. The ALJ does not discuss the time differential among the reports and how those reports should be considered in light of changes in plaintiff's condition and diagnosis. While giving unspecified weight to Eyman's report, the ALJ concludes that plaintiff has a cognitive disorder even though Eyman does not. The ALJ does not appear to consider or discuss the inconsistency between Mintz's report and Eyman's report on this issue either. There is also a discrepancy between the ALJ's finding that plaintiff has bipolar disorder and the failure of Mintz to list bipolar disorder as part of his diagnostic impressions.[1]

Some of these matters are addressed by defense counsel in the brief of the Commissioner. In particular, defense counsel contends that Milius' report is inconsistent with some progress notes.

---

[1] We further agree with plaintiff that the ALJ failed to discuss the opinion of the nonexamining physician, Dr. Witt, as reviewed by Dr. Jessop. (Tr. 340-56 & 385-86). Such opinions must be considered. 20 C.F.R. § 404.1527(f). While there is no requirement that all evidence be discussed by the ALJ (Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)), the failure to discuss this evidence adds to the court's difficulty in following and reviewing the ALJ's analysis.

Counsel also notes that Eyman and Mintz mentioned signs of improvement in plaintiff's condition and hope for successful treatment. We agree with plaintiff, however, that the court may not rely upon defense counsel's post hoc rationalizations for the ALJ's decision. We must evaluate the ALJ's decision on the basis of the reasons stated within the decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

Remand has been ordered in several cases where the court is unable to follow an ALJ's analysis because the ALJ has failed to adequately explain how he has evaluated medical opinions. E.g., Mosher, 479 F.Supp.2d at 1205; Kempel v. Astrue, 2010 WL 58910 (D.Kan. 1/4/2010); Sawyer v. Barnhart, 2009 WL 634666 (D.Kan. 3/11/2009). Remand has also been ordered when this flaw has affected the ALJ's RFC analysis. See Blevins v. Astrue, 2009 WL 274244 (D.Kan. 1/23/2009); Sexton v. Barnhart, 2006 WL 4045984 (D.Kan. 6/29/2006). The court shall remand this case for these reasons.

This holding makes it unnecessary for the court to more specifically address plaintiff's remaining argument regarding whether substantial evidence supports the ALJ's RFC finding. The ALJ's evaluation of the medical opinions on remand may impact the ALJ's RFC findings and any review of those findings. To assist any subsequent review by the court, it is urged that the ALJ on remand

relate his RFC findings to the evidence in the record.

IV. CONCLUSION

To conclude, the court shall reverse defendant's decision to deny benefits in this case and remand the case for further proceedings consistent with this opinion.  This judgment and remand shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 14th day of April, 2010 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge